No. 13,408.

## STONER v. RICE, AUDITOR.

121 51.
137 115¹
121 51
141 207
121 51
190US459
190US468
190US470.
190US472
190US474
121 51
162 591

RIPARIAN RIGHTS.—*Non-Navigable Lake.*—*Land Bordering upon.*—*Survey.*— *Fractional Quarter.*—*Owner Entitled to Complete Subdivision.*—The owner of lands bordering on a non-navigable inland lake, such as the one described in this case, when the subdivisions of the land are surveyed by running a meander line between the dry land and the water to ascertain the number of acres of dry land, and designating such subdivision as a fractional quarter or a lot, giving the number of acres of dry land, takes the title to all the land contained within the subdivision. He takes as a riparian owner, and his title includes, and he owns, the land beneath the lake far enough beyond the meandered line and water's edge to make out the full subdivision in which his land is so situated.

SAME.—*Real Estate.*—*Suit to try Title.*—*Objection that State can not be Sued.*— *Appearance by Auditor of State.*—*Effect of.*—Where the auditor of state appears to a suit instituted to determine the ownership of land, and is made a party to the suit and pleads to the complaint, he can not thereafter avoid a judgment on the ground that he represents the State, and the State claims title to the land, and can not be sued either directly or indirectly.

SAME.—*Patent to State.*—*Prior Mesne Conveyance from United States.*—*Lease.* —*Invalidity of.*—The title to the real estate in question being passed from the United States to the appellant by mesne conveyances prior to the issuing of the patent for the same to the State, the State took no title, and the lease from the State to the appellee conferred no right as against the appellant.

From the LaPorte Circuit Court.

*W. Niles, J. H. Bradley* and *L. A. Cole,* for appellant.

*L. T. Michener,* Attorney General, and *F. T. Hord,* Attorney General, for appellee.

OLDS, J.—The question in this case involves the title to the bed of a fresh-water lake, situated in the north half of section 8, in township 36 north, of range 1 west, in LaPorte county. This question arises on demurrer to the appellee's answer to the complaint. The lake is not navigable. The principal part of the lake is situated in the northwest quar-

ter of said section, a small portion extending into the north-west quarter of the northeast quarter of said section, and a small portion extending into the southwest quarter of the northeast quarter of said section. There are 39 $\frac{72}{100}$ acres of dry land in the south half of the northwest quarter of said section, situated lying to the west and south of said lake, and designated by the government survey as lot 4. There are 51 $\frac{33}{100}$ acres of dry land, situate in the north half of the north-west quarter of said section, lying to the north and west of said lake, and designated by the government survey as lot 3, and there are 34 $\frac{45}{100}$ acres of dry land in the northwest quarter of the northeast quarter of said section, lying east of said lake, designated by the government survey as lot 1.

The appellant owns these three lots, viz., lots 1, 3 and 4, deriving his title by mesne conveyances from the United States, prior to 1884, and by virtue of such conveyances and ownership claims to own and have the title to the land beneath the waters of the lake. On the contrary, it is contended by the appellee that by such conveyances the appellant only acquired title to the dry land; that the meandered line around the border of such lake constitutes the boundary line of appellant's land, and acting upon this theory the appellee, in the year 1884, procured a survey of the lake within the meandered line to be made by the general government, and platted as lots 5 and 6, and such survey and plat were made by the commissioner of the general land office, who is ex officio surveyor-general of Indiana, and the same were adopted and approved by the secretary of the interior, and the appellee also procured a patent to be issued by the United States to the State of Indiana for the same on March 17th, 1885.

The conclusion we have arrived at is, that the owner of lands bordering on non-navigable inland lakes, such as the one described in this case, when the subdivisions of the land are surveyed by running a meander line between the dry land and the water to ascertain the number of acres of dry land

and designating such subdivision as a fractional quarter or a lot, giving the number of acres of dry land, takes the title to all the land contained within the subdivision, that is to say, he takes as a riparian owner and his title includes, and he owns, the land beneath the lake far enough beyond the meandered line and water's edge to make out the full subdivision in which his land is so situated. As in this case the northwest quarter of the northeast quarter is surveyed and designated as lot 1, the purchaser of lot 1 acquires title to all the land situate within the boundary line of the said northwest quarter of the northeast quarter of said section as the same is platted by the government; and by the survey all the land situate in the north half of the northwest quarter of said section was designated as lot 3, and the purchaser of lot 3 acquired title to all the land in said north half of said northwest quarter of said section, whether a part of it be covered with water and constitutes a part of an inland lake or part of it be swamp, and the same is true in regard to the south half of the northwest quarter, designated as lot 4. The survey included all the land, and when a portion of a subdivision was covered with water such portion was meandered to determine the amount of dry land, and the meandered line does not constitute a boundary line.

It is contended that the riparian owner bordering on a non-navigable lake, like a river, takes to the thread or center of the lake. This rule is impracticable when applied to lakes. Suppose the lake to be round or nearly so, with riparian owners, as there would be, on the north, south, east and west of it, this rule could not be applied; while the rule we have laid down is practicable, and we think the proper rule to be applied in cases of this character. To hold that the meandered line constitutes the boundary would be against the great weight of authority, indeed the authorities are almost unanimous against such a doctrine.

The weight of recent authorities is to the effect that the owner of the bank owns to the center of the body of non-

navigable water, whether it be lake or river, and that if a lake gradually dry up the owners of the banks become the owners of the bed, each to the center thereof. But we are unable to find a case parallel with the one under consideration, or where the doctrine has been applied to a lake like the one in question, or to many of the lakes within this State. Where the body of water is a running stream, being a narrow rivulet at its head and growing larger and widening until it enters into another stream still larger; or where it is a long, narrow body of water, there is no trouble in applying this doctrine; but where the body of water is surrounded by land, and is almost circular in form, covering a quarter or half section, or more, of land, with riparian owners on either side, we can not say that the owners on the east and the west would take, to the exclusion of those upon the north and south, nor *vice versa*, nor would it do, as it seems to us, to apply a doctrine that would require the running of diagonal lines between the various owners, each reaching to the center of the lake.

The true doctrine to apply in the disposition of such land as is covered by the body of such lakes, we think, is that the government in making surveys included in such surveys all the land within the district surveyed, and if there was a lake or large pond which covered a part of a subdivision it was meandered out, and the dry land in such subdivision designated as a fractional subdivision, or lot; that in the purchase of such fractional subdivision, or lot, the purchaser took title to it as a riparian owner, with the right to the land as the water receded within the boundary lines of the subdivision conveyed to the purchaser. In other words, the purchaser acquired title to all the land within the subdivision, though it was described as a fractional subdivision, or lot. The authorized survey divided all the land within the district into subdivisions, and if, by reason of water upon a tract of the land, a portion of it was regarded at the time as worthless and unsalable, there was a meander line run to ascertain

the amount of dry land, and such subdivision was designated
as a fractional subdivision, or lot, and although thus described
the sale passed title to the whole subdivision.

There are two decisions of this court supporting this doc-
trine, *Edwards* v. *Ogle*, 76 Ind. 302, and in the case of *State*
v. *Portsmouth Savings Bank*, 106 Ind. 435, the court says:
" Without entering upon a review of the numerous cases upon
the subject of riparian rights, we are very clear that the
deeds, or patents from the State to Dunn and Condit carried
to them no more of the swamp and overflowed lands than were
included in the several surveyed subdivisions bounded by
the lake." Upon the general question of riparian rights we
cite *Boorman* v. *Sunnuchs*, 42 Wis. 233; *Rice* v. *Ruddiman*,
10 Mich. 125; *Jones* v. *Johnston*, 18 How. 150; *Banks* v.
*Ogden*, 2 Wall. 57; *County of St. Clair* v. *Lovingston*, 23
Wall. 46; *Murry* v. *Sermon*, 1 Hawks, 55; *Municipality* v.
*Cotton Press*, 18 La. 436; *Warren* v. *Chambers*, 25 Ark. 120;
*Ridgway* v. *Ludlow*, 58 Ind. 248; *Ross* v. *Faust*, 54 Ind.
471; *Boom Company* v. *Adams*, 44 Mich. 404; *Richardson*
v. *Prentiss*, 48 Mich. 88.

The further question is presented in the case that the State
claims title to the land, and it can not be sued, either directly
or by any action in relation thereto, against the appellee as
auditor of state. The action was originally commenced
against one Simeon Harness, and William Everhart, sheriff
of Laporte county, alleging ownership in the plaintiff, and
that the auditor of state had executed a lease to Harness,
and that the auditor of state had issued a warrant to the
sheriff of said Laporte county, commanding said sheriff to dis-
possess said appellant, and to place said Harness in posses-
sion; and afterwards the auditor of state came into court
and answered to the complaint, and the cause was dismissed
as to the other parties.

The auditor of state was seeking to dispossess the appel-
lant of the land, and he had a right to have his title settled
and to continue in possession, and after he had commenced

suit against the occupant the auditor of state appeared and was made a party to the suit and pleaded to the complaint, and he can not now avoid a judgment on the ground that he represents the State, and the State claims title to the land and can not be sued either directly or indirectly. *State, ex rel.*, v. *Board, etc.*, 101 Ind. 69 ; *State* v. *Portsmouth Savings Bank, supra.*

As the cause was commenced it involved a litigation between two parties claiming a right to the land, one claiming title by mesne conveyances from the United States, and the other by lease from the State.

The title to the real estate in question having passed from the United States to the appellant by mesne conveyances prior to the issuing of the patent for the same to the State, the State took no title, and it follows, therefore, that the court erred in overruling the demurrer to the defendant's answer.

Judgment reversed, at appellee's costs, with instructions to the court below to sustain the demurrer to the answer.

