SANDERS, JR. *v.* DE ROSE.

[No. 26,469.   Filed July 6, 1934.]

*Doak R. Best* and *Harris W. Hubbard,* for appellant.

*Milo Thompson,* for appellee.

MYERS, J.—This was a suit brought by appellant against appellee praying for injunctive relief. The complaint, in substance, alleges that appellant is the owner and in possession of the northeast quarter of Section 22, Town 37 north, Range 13 east, in Steuben county, Indiana, of which land about twenty acres is covered by a non-navigable body of fresh water, known as Center Lake; that all of this lake is located upon his land except a small portion thereof along his east line owned by one Artie D. Fast; that appellant, on the land so covered with water, keeps boats for hire to persons who desire to go upon the same for rowing, fishing, and

other pasttime, for which he receives a large profit and income; that as a resort for pleasure and recreation there is a demand for such service by the people in the vicinity of this lake and those who visit the county; that appellee, in violation of the rights of appellant, and over his objection, on July 6, 1928, and on sundry days and times thereafter, up to and including August 15, 1928, entered upon the land of appellant, so covered by water, over the land of Artie D. Fast, with boats and fishing tackle, rowed, fished, and anchored his boats for hours under a claim of right so to do in defiance of appellant's protest and request to depart, and then to other persons present and theretofore to the public generally he asserted that appellant did not own the land so covered with water and had no right to exercise any control over the same, thereby wrongfully and unlawfully persuading other persons to wrongfully go upon the water and lands of appellant and to remain thereon in opposition to appellant's request and orders; that by the continued action and advice of appellee, the public was induced to believe that appellant had no right to charge for the right to row and fish on his land and in consequence thereof his business was greatly injured, and to his damage in the sum of $1000.

A demurrer to this complaint for want of facts was sustained and, appellant refusing to plead further, judgment was entered that plaintiff take nothing and defendant recover his costs. Error is here assigned on the action of the court in sustaining appellee's demurrer to the complaint for want of facts.

Several alleged defects in the complaint are pointed out by the memorandum to the demurrer, but in our opinion the controlling or dominant question for our decision is: May the owner of a congressional surveyed unit of a non-navigable inland fresh-water lake, having an inlet and outlet but not connected with any public

waters of the state, exclude an adjoining owner or owners, or the public having a license from such owners, from boating and fishing in the waters on his land?

Appellee, to support the judgment of the court below, cites the case of *Beach* v. *Hayner* (1919), 207 Mich. 93, 173 N. W. 487, which, upon a casual reading, seems to support his contention, but it will be noticed that this case rests upon the dissenting opinion in the case of *Sterling* v. *Jackson* (1888), 69 Mich. 488, 37 N. W. 845, and the case of *Inhabitants of West Roxbury* v. *Stoddard & Another* (1863), 89 Mass. (7 Allen) 158, which was a tort case in which the inhabitants of West Roxbury charged the defendants with having unlawfully entered upon a certain pond, cut and removed ice therefrom, the alleged property of the plaintiffs.

It will be observed from the opinion in the Roxbury case that by Colonial ordinances of 1641-1647 great ponds were defined as containing more than ten acres of land, and were, by these ordinances, devoted to public use. The court in that case concluded its considerations as follows (p. 171):

> "1. Great ponds, containing more than ten acres, which were not before the year 1647 appropriated to private persons, were by the colony ordinance made public, to lie in common for public use.
>
> "2. This ordinance applied to all these ponds, whether at that time included within the territory granted to a town, or to any body of proprietors for the plantation of a town, or not then granted by the government of the colony, if they had not then been appropriated to particular persons, either by the freemen of the town or by the general court.
>
> "3. No possession adverse to the public right could be acquired or held by the town of Roxbury by means of any of the acts and votes set forth in the report.
>
> "4. Fishing, fowling, boating, bathing, skating or riding upon the ice, taking water for domestic or agricultural purposes or for use in the arts, and the

cutting and taking of ice, are lawful and free upon these ponds, to all persons who own lands adjoining them, or can obtain access to them without trespass, so far as they do not interfere with the reasonable use of the ponds by others, or with the public right, unless in cases where the legislature have otherwise directed."

We are not advised of any statute in this state authorizing the use of Center Lake by the public, and the facts alleged in the complaint repel any claim of any dedication of the lake for such use. We therefore decline to follow the Beach case.

Our attention is called to the case of *State* v. *Lowder* (1926), 198 Ind. 234, 153 N. E. 399, which involved the alleged unlawful possession of a seine, and the unlawful taking of fish from Lattas Creek Pond with a seine, in violation of §§613, 619, Acts 1905, p. 584. These sections had to do with the protection of fish and were a part of the game laws of this state. The theory of the statute is that property rights in fish in a lake are in the public until reduced to actual possession, and hence private ponds were excepted from the edicts of the statute. Lattas Creek Pond was the old channel of White River which at low water was cut off from the river, but during heavy rainfalls the river overflowed and fish could pass in and out of the pond. Private ponds were not definitely defined until 1913, Acts 1913, p. 368, §6, but this court held that the words "private pond," as used in the statute defining the offenses charged, were used in the common-law sense of describing a body of water wholly upon the land of a single owner or group of owners and not connected with any public waters of the state. In other words, the state has the power to regulate the time, the manner, and the extent of taking fish from ponds or small lakes with outlets into public waters notwithstanding the ownership of their beds. The real question in that case was

whether or not, under the evidence, the pond from which the fish were taken was a private one. The court held that it was not and sustained the appeal. The Lowder case is clearly distinguishable from the one at bar, which in no manner involves the question of a private pond.

The subject matter here in question has been the source of much litigation in this country. Courts of last resort seemingly have reached conflicting conclusions and because of which text-writers have given much time toward analyzing the various opinions in an endeavor to formulate general rules applicable to the rights of the public, riparian owners, and paper title owners of the soil underlying non-navigable inland lakes. From our study of the decisions of the courts of last resort, when resting entirely upon the principles of the common law, there is practically no disagreement. The supposed conflict and the rules established in the various states, generally speaking, are the result of local laws or existing special conditions which takes the case out of the common-law rule governing the rights of real estate owners along non-navigable rivers and lakes. We are not advised of any statute of this estate, or act of Congress, or reservation, limitation or condition in the instrument passing title from the state or the federal government which in any way enlarges, limits, or otherwise serves to take this case without the rule of the common law.

The complaint alleges ownership and possession of a tract of land corresponding to congressional surveys— a "part of the public law," *Ridgway et al.* v. *Ludlow* (1877), 58 Ind. 248, 253, thus fixing the boundary lines of appellant pertaining to Center Lake as certainly as the boundary lines of his upland. *Edwards* v. *Ogle* (1881), 76 Ind. 302, 306, 307; *Stoner* v. *Rice, Auditor* (1889), 121 Ind. 51, 22 N. E. 968. It

must be kept in mind that this case is not one of a class where the owners of land bordering upon a meandered natural lake can determine their ownership of its bed only by some measure or method of proportion. Appellant is actively using his portion of the lake for boating, fishing, and recreational purposes, with which use appellee is interfering not only by his own overt acts, but by his invitation and other means encouraging the public to do likewise under a claim of right.

Since the common law in relation to the ownership of land covered by the water of an inland non-navigable lake obtains in this state, it follows that where, as here, the portion of the several owners of the bed of such lake may be determined by congressional survey, each owner has the right to the free and unmolested use and control of his portion of the lake bed and water thereon for boating and fishing; or, as said by Farnham on Waters & Water Rights, p. 1376: "When the soil over which the water runs, and the water itself, belong to the same person, the owner cannot be correctly said to have a right of fishery, because the land and its profits are so completely identified as his inheritance that they cannot be separated. Therefore, the fishery is included in land and water; and since, in the absence of express reservation, land includes water, a grant of land will include both water and fishery." And, at page 1427, he said: "Since the right to fish follows the title to the soil, there is no public right of fishery in a lake the title to the bed of which is in private ownership."

Tiffany on Real Property, §251, declares that "The ownership of the surface of land involves, if not the ownership, at least the control, of the space above it to an indefinite distance."

In *Smoulter* v. *Boyd* (1904), 209 Pa. 146, 58 Atl. 144, a case where the facts were practically the same as the

one at bar, it was held that the land in controversy being in Boyd, he had the right to control the water in that part of the lake above his land. "Any use of it for boating purposes by another," says the court, "is an infringement of the right of property vested in the owner of the land."

Tending to support, either directly or by analogy, the theory of the present case which appellant would have us adopt, we cite: *Lembeck* v. *Nye* (1890), 47 Ohio St. 336, 24 N. E. 686; *Tripp* v. *Richter* (1913), 158 App. Div. 136, 142 N. Y. S. 563; *Beckman et al.* v. *Kreamer et al.* (1867), 43 Ill. 447; *Hardin* v. *Jordan* (1891), 140 U. S. 371, 11 S.-Ct. Rep. 808; 1, Kinney on Irrigation & Water Rights (2d Ed.), §§537, 542.

As to intention to dedicate lands to public use and its prescriptive right by permissive use, see: *Leonard* v. *Pearce* (1932), 348 Ill. 518, 181 N. E. 399; *Albright* v. *Cortright* (1899), 64 N. J. L. 330, 45 Atl. 634.

We are of the opinion that the weight of authority supports the contention of appellant, and hence the court erred in sustaining appellee's demurrer to his complaint.

Judgment reversed, with instructions to overrule appellee's demurrer to appellant's complaint, and for further proceedings not inconsistent with this opinion.