LARRY LEE LONGABAUGH, WILMA JANE LONGABAUGH, JOHN ELDEN VINSON, MARY ELLEN VINSON *v.* RALPH G. JOHNSON, PERSONAL REPRESENTATIVE OF THE ESTATE OF RALPH C. JOHNSON, RALPH G. JOHNSON INDIVIDUALLY, OPAL P. JOHNSON.

[No. 1-274A30. Filed January 29, 1975. Rehearing denied March 25, 1975. Transfer denied November 25, 1975.]

*Verner P. Partenheimer, Jr., Hall Partenheimer & Luecking,* of Princeton, for appellants.

*Robert S. McCormick, Dale P. Webster, McCormick and McCormick,* of Vincennes, for appellees.

ROBERTSON, C.J.—In a case involving the ownership of land Longabaugh (plaintiff-appellant) sued Johnson (defendant-appellee) for the value of timber cut from the property in dispute. Johnson counterclaimed against Longabaugh seeking to quiet-title to the property.

The trial court found against Longabaugh and for Johnson and ordered the title to the real estate quieted in Johnson.

Longabaugh contends that the trial court erred in two respects: that the judgment was contrary to the law of accretion and avulsion as it applies to the ownership of riparian property and that the evidence was insufficient to support a quiet title judgment in Johnson's favor.

In neither instance do we find reversible error.

In 1820, when the original government survey was made, the property in question was on the west bank of the White River. The river formed the boundary between Knox and Gibson counties at this point with Knox County lying to the west.

Johnson's predecessors in title owned the property on the Knox County side of the river and Longabaugh's predecessors in title owned property on the east bank.

The property's ownership was placed in dispute by the river's subsequent meandering for more than one-hundred years, for it moved to the west eventually forming an elongated horseshoe bend, a topographic feature referred to as an oxbow.

The land within that oxbow, referred to by the parties as the "island", is the subject of this appeal.

White River continued to migrate until the neck of the oxbow was only about two-hundred feet wide. In the early 1940's the main channel of the river crossed that neck which diverted the flow from around the horseshoe bend. The "island" remained encircled by the old river bed.

Longabaugh did not contend at trial that he held record title to the land. His claim of ownership rested upon the basis of two principles of riparian ownership known as accretion and avulsion.

Accretion is the process of gradual and imperceptible increase in land caused by the deposit of earth, sand or sediment thereon by contiguous waters and is held to be a source of title. *Irvin* v. *Crammond* (1915), 58 Ind. App. 540, 108 N.E. 539. Title to land formed by accretion is generally vested in the riparian owner of the land to which the alluvion attaches. Every proprietor of such riparian land is subject to loss by the same means as may add to his territory and as he is without remedy for his loss, he cannot be held accountable for his gain. *Town of Freedom* v. *Norris* (1891), 128 Ind. 377, 27 N.E. 869.

An avulsion is a sudden and rapid change of the course of a river by which the river abandons its old channel and seeks a new channel. *Nebraska* v. *Iowa* (1891), 143 U.S. 359. In order for an avulsion to occur there must be a sudden shifting of the channel of a river which cuts off a body of land such that after the shift of the river that body of land remains identifiable as land which existed before the shift and which never became part of the river bed. *Jeffrey* v. *Grosvenor* (1968), 261 Iowa 1052, 157 N.W.2d 114. An avulsion has no effect on the title to land.

Longabaugh theorizes that the accretion gave him ownership and the subsequent avulsion did not divest him of the property.

Longabaugh's negative judgment will be overturned only if it is contrary to law. *Columbia Realty Corp.* v. *Harrelson*

(1973), 155 Ind. App. 604, 293 N.E.2d 804. When a judgment is attacked as being contrary to law we may consider only the evidence most favorable to the trial court's judgment and all reasonable inferences to be drawn therefrom. *Heminger* v. *Police Commission of Fort Wayne* (1974), 161 Ind. App. 72, 314 N.E.2d 827.

Longabaugh offered evidence to prove the "island" was formed by accretion. Lowell Morrison, a surveyor, testified that accretion formed the "island", based upon exhibits showing the river's position in 1820, 1855, 1916, 1937, 1939, and 1966. Although these exhibits demonstrated the river's location on the various dates there was no direct evidence of the cause of the river's migration. The trial court could have determined that these exhibits were susceptible of other interpretations. The trial court was not necessarily bound by the expert's testimony. *Dudley Sport Co.* v. *Schmitt* (1972), 151 Ind. App. 217, 279 N.E.2d 266.

Additionally, the trial court heard evidence which would negate any avulsion theory in that the neck of the oxbow was cleared of brush and trenched.

In any event, the evidence was susceptible of differing interpretations so we cannot say, as a matter of law, that the judgment was contrary to law.

We further hold that the evidence does support a quiet title judgment in Johnson's favor.

Johnson claimed title to the land through adverse possession. In order to establish ownership by way of that doctrine, Johnson had to show that he was in possession for the statutory period, IC 1971, 34-1-2-2 (Burns Code Ed.), and that the possession was actual, visible, notorious, exclusive, and hostile. *Marengo Cave Co.* v. *Ross* (1937), 212 Ind. 624, 10 N.E.2d 917. Moreover, he had to prove that he paid all taxes falling due on the land during that period. IC 1971, 32-1-20-1 (Burns Code Ed.).

The record shows that in 1945 Johnson entered the island and dug a trench across its neck to relieve water pressure

on his land on the river's bend. Longabaugh's predecessor in title, Chester Daffron actually observed this digging but took no action against Johnson. Later Johnson leased the island by written agreement to local duck hunters who entered the property and constructed duck blinds which are clearly visible to anyone inspecting the property. He also cut timber off the island and entered the land in the Agricultural Stabilization Program. Johnson continued to use the island until the time of trial.

As for the payment of taxes an examination of the exhibits in the record shows that the island area lies within sections of land which are contained in the description in Johnson's abstract of title. Johnson paid taxes in accordance with the tax duplicates which assessed taxes on those sections. This evidence was such that the trial court could have found that Johnson had in fact paid taxes on the property. *Echterling* v. *Kalvaitis* (1955), 235 Ind. 141, 126 N.E.2d 573.

As to this issue, Longabaugh argues that Johnson had taken the disputed land off the Knox County assessment rolls and, thus, had not paid any taxes on that land. However, even if that contention were true, it would simply prove that no taxes were assessed on the island since Longabaugh did not offer any proof that the island area had been added to tax rolls by him or anyone else. If no taxes were assessed, none could be paid. Thus, the statute would not bar Johnson's claim since it requires only that taxes falling due must be paid by one claiming adverse possession.

The evidence was sufficient to support a finding that Johnson acquired title to the property through adverse possession.

Judgment affirmed.

Lowdermilk, J. concurs; Hoffman, J. concurs by designation.