**Ralph L. BATH and Margaret J. Bath, Appellants (Defendants Below),**

v.

**John R. COURTS and Nancy Courts, Appellees (Plaintiffs Below).**

No. 3–483a112.

Court of Appeals of Indiana, Third District.

Jan. 26, 1984.

James O. Wells, Jr., Rochester, for appellants.

Frederick E. Rakestraw, Brown, Rakestraw & Kehoe, Rochester, for appellees.

STATON, Judge.

Ralph and Margaret Bath and John and Nancy Courts are neighbors owning adjacent land on the shore of Nyona Lake. The Courts maintained a pier which extended out from their own property. Because the Courts wanted to build a platform at the end of their pier without interfering with the public pier, they angled their pier away from the public pier to cross the Baths' shorefront property. Shortly after the Courts angled their pier, the Baths built a pier parallel to the property boundary they shared with the Courts. This pier came within two feet of the Courts's pier and interfered with its use. The Courts obtain-

ed an injunction for the removal of the Baths' pier. It allowed the Courts to maintain their pier at an angle because it did not unreasonably interfere with the Baths' riparian rights or the public's rights. On appeal the Baths contend that their boundaries extend to the middle of Lake Nyona allowing them to maintain their pier and requiring the Courts to remove their pier from the Baths' property.

Affirmed in part, reversed in part, and remanded to the trial court to set a reasonable time for the Courts to move their pier within the boundaries of their shorefront property.

There is no set rule in Indiana for establishing the extension of boundaries into a lake between contiguous shoreline properties.[1] Therefore, to arrive at the most equitable result, we have consulted the law in jurisdictions with numerous lakes. The only case law on point comes from Wisconsin.

■ In Wisconsin, where a shoreline approximates a straight line and where the onshore property boundaries are perpendicular to the shore, the boundaries are determined by extending the onshore boundaries into the lake. *Nosek v. Stryker* (1981), 103 Wis.2d 633, 635, 309 N.W.2d 868, 870. Such is the fact situation here. This method, as applied to this case, is best illustrated by the diagram below:

---

1. Although several cases have mentioned division lines, no case has addressed the issue presented by the Baths and the Courts.

NYONA LAKE

This diagram shows that the Courts' pier encroaches upon the Baths' riparian tract only if we follow this method and if their tract extends to the length of the pier. Indiana case law supports the adoption of extending the shore boundaries as illustrated in the diagram.

A riparian owner acquires his rights to the water from his fee title to the shoreland. *Brown v. Heidersbach* (1977), 172 Ind.App. 434, 440, 360 N.E.2d 614, 619. The land conveyances to the Baths and to the Courts indicate that they own the shoreland contiguous to their onshore boundaries. According to the Indiana Supreme Court, a shoreline boundary vests title in the landowner to the middle of the stream. *Brophy v. Richeson* (1893), 137 Ind. 114, 119–20, 36 N.E. 424, 425; *accord,*

*Brown, supra,* 172 Ind.App. at 440, 360 N.E.2d at 619. It is undisputed that the Baths' and the Courts' lots both extend to the shoreline of the lake. Therefore, the Baths and the Courts have riparian rights to their property fronting Lake Nyona. *Sanders v. De Rose* (1934), 207 Ind. 90, 95–6, 191 N.E. 331, 333.

Riparian rights to accretion support this determination that the onshore boundaries extend out into the lake at a right angle. Accretion, the increase in land caused by earth, sand, or sediment deposits, generates a source of title which usually vests in the riparian owner of the land to which the alluvion attaches. *Longabaugh v. Johnson* (1975), 163 Ind.App. 108, 110, 321 N.E.2d 865, 867. If Lake Nyona were to naturally recede, title to the new land

would vest in the riparian owners by the extension of his shore boundaries. Therefore, it seems equitable and practicable in his case to follow the Wisconsin method of extending into the water the onshore boundaries which meet the water at a right angle.

Even though we are willing to extend the onshore boundaries, we are not willing to extend them to the middle of Lake Nyona. Early Indiana courts recognized that riparian rights included ownership to the middle of the stream or river. *Ross v. Faust* (1876), 54 Ind. 471, 476–77; *Brophy, supra* 137 Ind. at 121, 36 N.E. at 425; *Sanders, supra* 207 Ind. at 95, 191 N.E. at 333; *Brown, supra* 172 Ind.App. at 440, 444, 360 N.E.2d at 619; *Patton Park v. Pollak* (1944), 115 Ind.App. 32, 40, 55 N.E.2d 328, 331. Unless the deed revealed a contrary intention, riparian rights were extended from the shoreline to the middle of the riverbed because the courts thought it unlikely that a grantor would retain the strip of land under the water which would be of no practical value to him in the absence of access and which could be a source of litigation. *Earhart v. Rosenwinkel* (1940), 108 Ind.App. 281, 290–91, 25 N.E.2d 268, 272. However, the Indiana Supreme Court held that an enclosed lake, like Lake Nyona, bordered by various riparian lot owners, is not navigable and is not subject to the rule that the riparian owner holds title from his shoreline to the middle of the lake. *Stoner v. Rice* (1889), 121 Ind. 51, 53–4, 22 N.E. 968, 969. The Court explained that such application of this rule to lakes would exclude some owners from title to any of the waterbed. *Id.* at 54, 22 N.E. at 969. In the early court decisions, determinations of riparian rights depended to a great extent upon whether the lake was navigable or non-navigable.

Indiana courts have failed to clearly define "navigable." The most recited definition is that navigability in law is navigability in fact.[2] *State v. Kivett* (1950), 228 Ind. 623, 629, 95 N.E.2d 145, 149. The Baths contend that Lake Nyona is navigable because it is used for fishing and for recreation. Although it would be desirous to define "navigable" lakes and even though many states have found a lake to be "navigable" because it is used for recreation, our statutory law renders such a determination unnecessary.[3]

According to the governing statute, the State of Indiana holds in trust for public use and enjoyment all freshwater lakes; it makes no distinction between a navigable lake and a non-navigable lake:

"13–2–11–1 [27–654]. Freshwater lakes—Authority of state to control for public enjoyment.—The state of Indiana is hereby vested with full power and control of all of the public freshwater lakes in the state of Indiana both meandered and unmeandered and the state of Indiana shall hold and control all of said lakes in trust for the use of all of its citizens for fishing, boating, swimming, the storage of water to maintain water levels, and for any purposes for which said lakes are ordinarily used and adapted, and no person owning lands bordering any such lakes shall have the exclusive right to the use of waters of any such lake or any part thereof. [Acts 1947, ch. 181, § 1.]"

IC 1981, 13–2–11–1 (Burns Code Ed.). Although this section limits the riparian rights of bordering landowners, they retain their right to build and maintain a pier:

"13–2–4–5 [68–105]. Piers, wharves, and docks.—Any riparian owner of lands within this state bordering upon a navigable stream may build and maintain within his premises so bordering on such

---

2. The "capacity of the stream" test as discussed by the Court in *State v. Kivett, supra,* required the Court to look at the facts. The facts in that case do not correspond to the facts presented by the Baths and the Courts concerning the navigability of Lake Nyona. *Id.* at 630, 638, 95 N.E.2d at 148, 152.

3. *See Bott v. Commission of Natural Resources of State of Mich. Dept. of Natural Resources* (1982), 415 Mich. 45, 111, 327 N.W.2d 838, 865, n. 21 for the list of states which follow the recreational test to define navigability.

stream, and upon the submerged lands beneath the water thereof, piers, wharves, docks or harbors in aid of navigation and commerce, and may use, occupy and enjoy the same as appurtenant to his said lands: Provided, That such piers, docks and wharves shall not extend into such stream further than is necessary to accommodate shipping and navigation, and in no case so as to obstruct the same. [Acts 1905, ch. 167, § 28, p. 521.]"

IC 1981, 13–2–4–5 (Burns Code Ed.). This section allows the riparian owner the right to build a pier either for commerce, navigation, or for his own pleasure. *Accord, Brown, supra* 172 Ind.App. at 443–44, 360 N.E.2d at 620–21. When read together, these sections allow the riparian owner to maintain a pier so long as it does not interfere with rightful uses of the lake by others.

■ The public and other riparian owners have the right to use Lake Nyona. These rights can co-exist only if the riparian right to build a pier is limited by the rights of the public and of other riparian owners. Therefore, riparian owners may build a pier within the extension of his shore boundaries only so far out as not to interfere with the use of the lake by others.

■ The Courts' pier unlawfully encroaches upon the Baths' shorefront property. The trial court erred in not ordering that it be moved. The interruption of the Baths' view had no weight in this decision. In fact, shorefront property carries with it the view of piers and docked boats. *Nosek, supra* 103 Wis.2d at 642, 309 N.W.2d at 874; *Brown, supra,* 172 Ind.App. at 443, 360 N.E.2d at 620. As long as the Courts straighten their pier so that it no longer encroaches upon the Baths' riparian rights, this dispute will be settled. While we sympathize with the Courts' desire to add a platform to their pier for further enjoyment, the law as determined above prohibits encroachments upon the riparian rights of another.

[8] The trial court properly ordered the Baths to remove their pier which was interfering with the Courts' use of their pier.

The evidence clearly showed that the Baths did not intend to use the pier for any purpose other than to interfere with the Courts' use of their pier. As 13–2–4–5 provides, piers may be maintained for commerce, navigation, and the owner's enjoyment. A pier built for interference is a violation of this statutory provision.

Affirmed in part, reversed in part, and remanded to the trial court to set a reasonable time for the Courts to move their pier within the boundaries of their shorefront property.

HOFFMAN, P.J., and GARRARD, J., concur.