**Eleanor ZAPFFE and Denise Zapffe, Appellants–Plaintiffs Below,**

v.

**James SRBENY, James Bischoff, James Tellstrom, Frances McCarthy and F.A. Miller, Appellees–Defendants Below.**

No. 75A03–9108–CV–233.

Court of Appeals of Indiana, Third District.

March 5, 1992.

Rehearing Denied April 29, 1992.

Robert J. Palmer, John J. Connaughton, May, Oberfell & Lorber, South Bend, for appellants.

Arnold A. Coons, Jr., Portage, for appellees.

STATON, Judge.

Eleanor and Denise Zapffe appeal the trial court ruling in their action for permanent injunction and damages. The Zapffes sought an injunction to prevent the defendants (collectively referred to as "Srbeny") from encroaching on the Zapffes' riparian rights as owners of land adjoining Bass Lake in Starke County, Indiana.[1] Although the trial court enjoined Srbeny from installing his pier in any manner so as to encroach upon the Zapffes' riparian tract, the court did not expressly rule with respect to Srbeny's mooring devices, consisting primarily of augers and weighted boat stations which are located in the lake beyond the pier. The Zapffes allege that this determination was in error, and now raise the following issues for our review.

I. Whether the trial court erroneously declined to render final judgment with respect to Srbeny's mooring devices.

II. Whether the trial court judgment was contrary to law.

We affirm.

In its ruling, the trial court concluded:

It appears to this Court that the State of Indiana, through its Department of Natural Resources, should have the first determination of how the public uses a fresh water lake, including the location of boat moorings, and a Court should make no judgments affecting same without the State being a party. This is different than a dispute between two riparian land owners.

Record, pp. 192–93. The court cited the following statute in support of its ruling:

(a) The natural resources and the natural scenic beauty of Indiana are a public right, and the public of Indiana has a vested right in the preservation, protection, and enjoyment of all the public freshwater lakes of Indiana in their present state, and the use of such waters for recreational purposes.

(b) The state has full power and control of all of the public freshwater lakes in Indiana both meandered and unmeandered; it holds and controls all of such lakes in trust for the use of all of its citizens for recreational purposes.

(c) No person owning lands bordering a public freshwater lake has the exclu-

---

1. As this court recently noted, riparian rights are traditionally associated with owners of land abutting a river or stream, while those with shoreline on a lake or pond acquire littoral rights, though the term "riparian" is widely used to refer to both classes of ownership. *Hutner v. Kellogg* (1990), Ind.App., 563 N.E.2d 1338, 1339 n. 1.

sive right to the use of waters of any such lake or any part thereof.

IND.CODE 13–2–11.1–2 (1988).

■ The Zapffes assert that the trial court, in effect, dismissed a portion of their claim on the ground that they failed to exhaust their administrative remedies by way of an action involving the Department of Natural Resources ("DNR"). Srbeny contends that the trial court merely found against the Zapffes with respect to the boat moorings.

In support of their argument, the Zapffes cite *Guthrie v. McIntyre* (1990), Ind.App., 563 N.E.2d 651, where landowners sought damages and an injunction preventing the diversion of water by an upstream riparian owner. Because the upstream landowner had secured approval from the DNR, the trial court declined to make a decision on damages, concluding that the plaintiffs had not exhausted their administrative remedies before the DNR. Our court of appeals reversed, holding that there is no provision under the auspices of the DNR for aggrieved property owners to bring an action for enjoinder or damages; therefore, there were no administrative remedies available to the plaintiffs. *Id.* at 652.

We believe that *Guthrie* is distinguishable from the case before this court. In *Guthrie*, the DNR had already intervened in the work performed on the riparian tract; no such administrative intervention is implicated in this case. Indeed, the trial court in *Guthrie* expressly relied on the plaintiffs' failure to exhaust their administrative remedies, while the court in this case made no such conclusion. The Zapffes, however, emphasize the trial court's statement that "a Court should make no judgments" affecting the rights of the DNR, indicating that it would refrain from deciding the issue relating to the boat moorings. Record, pp. 192–93. If the trial court had gone no further, we might agree with the Zapffes. However, the trial court did go further by defining the Zapffes' riparian tract as an extension of their east boundary line "to a distance of fifty (50) feet out from the meander line of Bass Lake into the waters of Bass Lake." Record, p. 193. The boat moorings in question vary in distance from the meander line of Bass Lake, but no mooring is closer than about 100 to 120 feet from shore. Thus, the moorings are positioned outside the riparian tract. Because the trial court established the dimensions of this property in no uncertain terms, the Zapffes cannot say that this issue was not adjudicated to finality. *See Hammond Pure Ice & Coal Co. v. Heitman* (1943), 221 Ind. 352, 47 N.E.2d 309, *reh'g denied* (in action for specific performance to compel purchase of bonds, judgment of specific performance on certain bonds and for damages on other bonds amounted to an adjudication against the plaintiff on the specific performance claim as to the other bonds). For this reason, we must agree with Srbeny that the issue has been decided against the Zapffes, who therefore appeal a negative judgment.

■ When reviewing an appeal from a negative judgment we must determine whether the judgment is contrary to law. *McClure Oil Corp. v. Murray Equipment, Inc.* (1987), Ind.App., 515 N.E.2d 546, *reh'g denied.* A judgment is contrary to law when the evidence is without conflict and leads to but one conclusion which is contrary to that reached by the trial court. *Ashland Pipeline Co. v. Indiana Bell Telephone Co., Inc.* (1987), Ind.App., 505 N.E.2d 483, *trans. denied.* Therefore, we will review the trial court's demarcation of the riparian tract under this standard.

■ This court discussed the extent of a riparian landowner's property in *Bath v. Courts* (1984), Ind.App., 459 N.E.2d 72. In *Bath*, riparian landowners built a pier that encroached upon the extended property line of neighboring landowners. In response, the neighboring riparian owners built a pier within two feet of the first pier, interfering with its use. In that case, we recognized that the onshore boundaries of a riparian tract extend into the lake in a line perpendicular to the shore, where the shoreline approximates a straight line. *Id.* at 74–75. This rationale is a logical extension of the doctrine of accretion; that is, an increase in land caused by earth, sand, or

sediment deposits. *Id.* at 74 (citing *Longabaugh v. Johnson* (1975), 163 Ind.App. 108, 110, 321 N.E.2d 865, 867, *trans. denied*). Thus, if Bass Lake were to naturally recede, title to the new land would vest in the riparian owners by the extension of their shore boundaries. *See Bath, supra,* at 74–75; IC 13–2–11.1–4. Nonetheless, we did not determine the precise extent of the riparian landowner's boundaries in *Bath* because state law governed the rights of the respective parties to install a pier.

Indiana law allows a riparian owner to build "piers, wharves, docks or harbors in aid of navigation and commerce" on the riparian owner's premises or "upon the submerged lands beneath the waters thereof...." IC 13–2–4–5. Because of the competing interests of riparian landowners and the public's right to the enjoyment of the waters in Indiana's freshwater lakes, we concluded in *Bath* that riparian owners may build a pier within the extension of their shore boundaries only so far out as not to interfere with the use of the lake by others. *Id.* at 76. However, because the parties in this case stipulated, and the trial court so found, that Srbeny had no riparian rights, the *Bath* case is of limited assistance in resolving this dispute. Thus, we now address the question left open in *Bath:* How far into a lake do the boundaries of a riparian tract extend?

One point is well-settled and acknowledged by the parties: the boundaries of riparian property do not extend to the middle of the lake. *Id.* at 75; *Stoner v. Rice* (1889), 121 Ind. 51, 22 N.E. 968. The Zapffes contend that their boundary lines extend to where the normal water level of Bass Lake reaches a depth of five feet. Alternatively, they contend that a boundary line extending 200 feet from shore is suggested by statute. Srbeny submits that the *Bath* decision proscribes the extension of a riparian tract beyond the finite point where such an extension would interfere with the use of the lake by others, *see Bath, supra,* at 76, though Srbeny does not suggest the location of the "finite point."

The Zapffes posit that the extension of their tract to the five foot level of Bass Lake is necessary "in order to safely navigate some boats which might belong to Zapffes' guests[.]" Appellants' Brief, p. 20. This statement is mere speculation, as the Zapffes point to no evidence in the record that such boats are in fact used by their guests, or that such boats require a depth of five feet in order to safely navigate. Matters outside the record cannot be considered by the court on appeal. *Shigley v. Whitlock* (1974), 160 Ind.App. 78, 310 N.E.2d 93. We must decide the case on the record before us, and cannot speculate as to the actual facts of a case. *Norling v. Bailey* (1951), 121 Ind.App. 457, 98 N.E.2d 513, *reh'g denied* 121 Ind.App. 457, 99 N.E.2d 439. This claim is especially dubious in light of the stipulated fact that the Zapffes do not maintain a pier in Bass Lake. Record, p. 137, Stipulated Fact No. 13.

Alternatively, the Zapffes rely on IC 14–1–1–29 for the proposal that their riparian tract should extend 200 feet from shore. This statute reads in pertinent part:

No person shall operate any motorboat so as to approach or pass within two hundred (200) feet of the shoreline of any lake or channel thereof at a place or point where such lake or channel is five hundred (500) feet or more in width, except for the purpose of trolling or for the purpose of approaching or leaving a dock, pier or wharf or the shore of such lake or channel. No person shall operate any motorboat so as to approach or pass within two hundred (200) feet of the shoreline of any lake or channel thereof at a rate of speed greater than ten (10) miles per hour[.]

IC 14–1–1–29. From this statute, the Zapffes conclude that their riparian tract would allow them to build a pier two hundred feet long because, in their words, "it is illegal to operate a motorboat within 200 feet of shore." Appellants' Brief, p. 21. This argument is untenable. By the very language of the statute, it is not illegal to operate a motorboat within 200 feet of the shoreline for trolling or to approach a dock, pier, or the shore. Thus, the pier envisioned by the Zapffes would in fact inter-

fere with the operation of motorboats under the statute. Moreover, such a pier would clearly interfere with the public's right to use the waters of Bass Lake for other recreational purposes, in accordance with IC 13–2–11.1–2.

■ Instead of a rigid application using a measure of depth or length to determine riparian boundaries, the better view would be to apply a "reasonableness" test to accommodate the diverse characteristics of Indiana's numerous freshwater lakes. *See, e.g., Heston v. Ousler* (1979), 119 N.H. 58, 398 A.2d 536 (exercise of riparian rights is governed by a rule of reasonableness); *Hefferline v. Langkow* (1976), 15 Wash. App. 896, 552 P.2d 1079 (riparian owners may exercise such rights as access, swimming, fishing, bathing, and boating, subject to a rule of reasonableness). Clearly, the installation of a pier by a riparian owner is a reasonable use under IC 13–2–4–5, so long as it does not interfere with the use of the lake by others. One of the primary reasons for extending a pier any substantial distance into a lake is to permit boatowners to moor and launch their boats in areas of navigable water. Thus, any extension of a pier beyond the point required for the mooring and launching of boats might be considered unreasonable.

The reasonableness determination will additionally depend on factors such as the normal water level of the lake, the number of riparian owners on any one tract, the purpose of the pier, and the statutory consideration of the effect on others who use the waters of Bass Lake. *See* IC 13–2–11.1–2. This determination should be decided on the basis of the facts and circumstances of each particular case so that a court can treat each affected riparian owner equitably.

■ In the present case, the court had the benefit of evidence indicating that, while the Zapffes had not installed a pier on their tract, neighboring property owners had installed piers in close proximity to the Zapffes' lot, which piers extended no more than approximately fifty feet into Bass Lake. Srbeny's pier, located just to the east of the Zapffes' tract, is also about fifty feet in length. Exhibits admitted at trial indicated that boats were moored at such piers when Bass Lake was at its normal water level, and that the Zapffes' neighbors used the piers for other recreational activities. Therefore, we conclude that the extension of the Zapffes' riparian tract to a length of fifty feet from the meander line of Bass Lake comports with the concept of reasonable use we adopt today. Accordingly, the trial court's decision so establishing the boundary of the riparian tract was not contrary to law.

Because the trial court did not err by fixing the boundary of the Zapffes' riparian tract, we conclude that Srbeny's mooring devices (the closest of which is approximately fifty feet outside of the tract) do not encroach upon the Zapffes' riparian rights.

■ The Zapffes next make the argument that a non-riparian owner such as Srbeny is prohibited from maintaining a pier or boat moorings in the lake bed under IC 13–2–4–5 and IC 13–2–11.1–2. This argument must fail for the reason that the Zapffes do not have standing to enforce these statutes. As Srbeny correctly observes, title 13 of the Indiana Code does not confer upon individual litigants a right of action for violations of its chapters. The state has full power and control of all the public freshwater lakes in Indiana. IC 13–2–11.1–2. Sections 12 and 13 of chapter 11.1 empower the state, through the DNR, to seek an injunction or damages for violations of chapter 11.1. We express no opinion on whether Srbeny's boat moorings encroach upon public rights in the waters of Bass Lake, as that question is not before this court.

The trial court is affirmed.

GARRARD and MILLER, JJ., concur.