## JOSEPH FOWLER, JUNIOR, APPELLANT, v. NATHAN HART.

Real property, in Louisiana, was bound by a judicial mortgage.

The owners of the property then took the benefit of the Bankrupt Act of the United States.

A creditor of the bankrupt then filed a petition against the assignee, alleging that he had a mortgage upon the same property, prior in date to the judicial mortgage, but that, by some error, other property had been named, and praying to have the error corrected. Of this proceeding the judgment creditor had no notice.

The court being satisfied of the error, ordered the mortgage to be reformed, and thus gave the judgment creditor the second lien instead of the first; and then decreed that the property should be sold free of all incumbrances. Of this proceeding, and also of the distribution of the proceeds of sale, the judgment creditor had notice, but omitted to protect his rights.

In consequence of this neglect, he cannot afterwards assert his claim against a purchaser, who has bought the property as being free from all incumbrances.

THIS was an appeal from the Circuit Court of the United States, for the Eastern District of Louisiana.

The facts are stated in the opinion of the court.

It was argued by *Mr. Bradley*, for the appellant, no counsel appearing for the appellee.

*Mr. Bradley* thus stated his case and points.

Daniel T. Walden, as indorser of two notes of William Christy, was indebted to Fowler, the complainant, and suit was brought by him upon these two notes, and judgment recovered, as above stated.

At that time, Daniel T. Walden held and owned the premises described in the petition of Fowler, and also at the time when the third judgment was converted into a mortgage. Nor was there then any legal mortgage, nor had Fowler any notice of any equitable mortgage on that property. Just prior to that time, Walden, being indebted to the defendant, Hart, had given him a special mortgage, describing with particularity certain other property, not embracing or touching any part of the premises now claimed by Fowler. In this condition of things, Walden was declared bankrupt. Hart then filed his petition in the Bankrupt Court, setting up, as against the assignee and Walden, that there was a mistake in the description of the property intended to be conveyed by Walden's mortgage to him, and claiming that the said mortgage was intended to convey the premises now claimed by Fowler.

No process was served upon Fowler, or upon the other creditors of Walden. The Bankrupt Court, however, proceeded to take the proofs and adjudicate, and in its judgment affirmed the pretensions of Hart, ordered the mistake to be corrected, set up his special mortgage on these particular premises, and ordered them to be sold to satisfy that special mortgage, and the surplus, if any, to be brought into the general fund. The sale was made in execution of that order, and at that sale Hart became the purchaser, for a sum less than the amount of his mortgage, received a deed, went into possession, and has ever since been in possession, claiming under that proceeding and sale.

The Circuit Court decided, on this state of facts, that the law

and the evidence are in favor of the defendant; ordered, adjudged, and decreed, that there be judgment in favor of the defendant, Hart, and that the cause be dismissed at complainant's costs. And Fowler appealed.

In the case of Houston et al. *v.* The City Bank of New Orleans, 6 How. 505, 506, this court distinctly affirmed the power of the District Court, in bankruptcy, to convene the mortgage creditors, sell the mortgaged property, pay the proceeds to the mortgagees, according to their respective priorities, and order the cancellation of the mortgages. No such order has been made in this case.

The questions arising in this case, and not hitherto decided by this court, are, —

1st. The powers of the District Court to exercise, in a summary proceeding, a jurisdiction heretofore limited to courts of equity, to correct mistakes in deeds, and reform them according to the intent of the parties; and,

2d. To correct a mistake in a deed, as between third parties, creditors, or purchasers, without notice.

3d. To make such correction, without causing such third parties to be convened and made parties to the suit.

### *First.*

I. This court has said, in Ex parte Christy, 3 How. 312, that the District Court, sitting in bankruptcy, is clothed with the most ample powers and jurisdiction "over the rights, interests, and estate of the bankrupt, and over the conflicting claims of creditors; and,

II. Page 317: The District Court has a concurrent jurisdiction, to the same extent and with the same powers as the Circuit Court, over liens, judgments, and securities.

III. But it is submitted, that this jurisdiction must be over liens and securities already created, and not over such as are to be created by the superior power of a court of equity.

IV. A court of law of general jurisdiction has, unquestionably, jurisdiction over the same subjects, to a certain extent; but it has not, and never has been supposed to have, that creative power which has been hitherto confided to courts of equity alone, to compel men to reform their deeds and contracts according to the intent of the parties.

V. The 8th section of the Bankrupt Act gives to the Circuit Court concurrent jurisdiction with the District Court, in bankruptcy; and it may well have been designed for such cases as this, and to prevent that injustice, danger of which might well be apprehended from the exercise of the summary powers given to the District Court in bankruptcy.

VI. It is not essential to the exercise of the summary jurisdiction granted, and intended to be conferred, inasmuch as, by this 8th. section, provision is made for the means which may be needed to effect a full settlement of the estate of the bankrupt.

VII. Inasmuch, then, as the power is not given in terms in the Bankrupt Act, and is not essential as a means to accomplish the end sought by that act, it is submitted that it does not exist, and that the court in bankruptcy had no power to correct a mistake, if any such existed, in the description of the property claimed by the defendant, Hart.

### Second.

I. The recording of the judgment created a mortgage upon the real property of Walden, and that mortgage had priority, according to its date.

II. It was a lien such as was recognized by the law of Louisiana, and protected by the Bankrupt Act. Waller *v.* Best, 3 How. 111; Peck *v.* Jenness, 7 Id. 620, 621. "It is clear, therefore, that, whatever is a valid lien or security upon property, real or personal, by the laws of any State, is exempted by the express language of the act."

III. The mortgage creditor takes as a purchaser, and, taking as a purchaser, his title can only be affected by notice. It is not pretended there was, prior to the mortgage of Fowler, any notice in this case of the mistake, if any, in the description of the property in Hart's mortgage.

IV. A court of equity would have had no power to order the correction of the mistake, as against him, *a multo fortiori*, the court in bankruptcy had not power to do so, and to direct the cancellation of his mortgage.

### Third.

I. Nor is he estopped in any manner by the decree in bankruptcy. Such decree could only be operative upon parties and privies. The record shows that the only parties to the proceeding to correct the alleged mistake were Hart, and Christy the assignee, and Walden. Interrogatories are propounded to Walden, but he never appeared and answered. Christy alone answered, denying the allegations of the petition, and proof was taken, and upon these the decree was made.

II. Hart had notice, at the time of filing his said petition, of the lien of Fowler, because he was returned as a creditor by judicial mortgage, and therefore, having a lien, he was entitled to be convened. The object being to affect his rights, so far as they were superior to those of the general creditors, Hart could only

limit those rights by a proceeding in which Fowler could defend them.

III. Nor is he estopped by the notice and order of sale. The property therein described is said to be bounded by New Levee, Commerce, St. Joseph, and Julia streets.

The property in the decree correcting the mistake is described as containing 23 feet 5 inches front upon New Levee street, between Julia and St. Joseph streets, by 125 feet 6 inches deep on the line next to St. Joseph street, and 124 feet 7 inches on the line of lot No. 2, and designated as the house or store No. 110 in said New Levee street; and the description of the property in the petition of the assignee for the sale of the property is still different, and makes it house No. 10. The description in the original mortgage is, a certain lot of ground, No. 2, the house numbered 109, situated . . . . . between St. Joseph and Julia streets; measuring 18 feet 10 inches front on New Levee street, by 124 feet 7 inches deep on the dividing line of lot numbered 3, and 123 feet 8⅓ inches on the dividing line of lot No. 1, and about 21 feet 8 inches in the rear of the dividing line of lot No. 5. So that in fact the lot described in the mortgage was alongside of the one which it was pretended was designed to be conveyed, and both were within the description in the said notice to Fowler. He, therefore, was not only neither party nor privy; but he had no . ~tice of such pretended claim to put him on inquiry.

VII. Finally, it does not appear that there ever was any order by the court in bankruptcy to erase and cancel the said mortgage of said Fowler, and the same is now and hath ever been a valid and subsisting lien upon the lot claimed in his petition. In such case the law of Louisiana is clear that he had a right to proceed against the person holding the land, and to a judgment for the sale of the lot, and an account of the rents and profits in the hands of Hart, holding and claiming the same adversely.

Mr. Justice McLEAN delivered the opinion of the court.

This is an appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

Fowler filed his bill in the Third District Court of New Orleans, representing that on the 16th December, 1839, he recovered a judgment in the Commercial Court of New Orleans, against Daniel T. Walden and William Christy for $3,530.22, besides interest; that on the 29th December, 1839, he caused the judgment to be duly inscribed in the office of the recorder of mortgages for the parish of New Orleans, by which the same became a judicial mortgage on the real estate of the defendants in the parish; that Walden afterwards became bankrupt, and

32 *

Christy was appointed his assignee; and that he procured an entry of cancellation to be made by the recorder of judicial mortgages without his consent, and illegally; that the mortgage remains in force.

And the plaintiff states that when the judgment was recorded, and up to the time of the bankruptcy of Walden, he was the owner and in possession of a certain lot of ground and buildings thereon in the city of New Orleans, to wit, in the second municipality, in the square bounded by New Levee, St. Joseph, Commerce, and Julia streets, measuring 23 feet 5 inches front on New Levee street, by about 125 feet 6 inches in depth on the side nearest St. Joseph street, 124 feet 7 inches in depth on the side nearest Julia street, and about 21 feet 8 inches on the rear line; which property is liable to the judicial mortgage of the petitioner; that Christy, the assignee of Walden, sold the same lot to one Nathan Hart, of New York, who took possession thereof, and still remains in possession; that he well knew, at the time of his purchase, that the petitioner's mortgage was a lien on the same, and that Christy, the assignee, had no power to cancel the same. And the petitioner avers that his judgment lien was good under the 2d section of the Bankrupt Law.

On the application of Hart, he being a citizen of New York, the suit was removed from the State court to the Circuit Court of the United States.

In his answer Hart denies that the petitioner has a mortgage on the property described in his petition; and states that he purchased the same for the sum of $4,700, under a sale of the marshal, on 16th June, 1845, in pursuance of a decree of the United States District Court, entered the 23d May, 1845, sitting as a court of bankruptcy, in the matter of the bankruptcy of Daniel T. Walden, and confirmed according to law by a sale duly recorded from Christy, the assignee, before a notary-public the 19th June, 1845; and clear of all mortgages, the same having been cancelled, by order of the judgment of said court, the 23d May, 1845, on a rule, notice of which was duly served on petitioner.

The mortgage of the defendant, Hart, on the above property was dated 22d May, 1838, the judicial mortgage of the petitioner took effect the 29th December, 1839. But after the bankruptcy of Walden, and before the sale of the property to Hart by the assignee, it was discovered that there was a mistake in the mortgage in describing the property intended to be mortgaged. To correct this mistake a bill was filed by Hart against Christy, the assignee; and on the 5th December, 1844, a decree was obtained correcting the mortgage so as to describe the lot intended to be mortgaged. Of this proceeding the petitioner, Fowler, seems to have had no notice.

Afterwards, on the 24th April, 1845, the assignee petitioned the District Court, stating "that there is still in his possession, as assignee, the following described property, specially mortgaged to Nathan Hart to secure the payment of the sum of $8,655, with interest, which he prays may be sold on certain terms named. The lot above described is stated, and also other property of the bankrupt. The court ordered that due notice of the petition be published in two newspapers printed in the district, ten days at least before the time assigned for the hearing, and that the petition be heard on the 23d May ensuing.

On the 10th May, 1845, the following rule was entered by the court: "The assignee of the said estate having filed in this court a petition as above described, it is ordered by the court that a hearing of the said petition be had on Friday the 23d May next, at 10 o'clock A. M., when, as one of the mortgage creditors of said estate, you are notified to appear and show cause why the property, as described below, should not be sold upon the terms and in the manner and form set forth in said petition, and why the said assignee should not be authorized to erase and cancel the mortgages, judgments, and liens recorded against said bankrupt, and in favor of certain creditors of the estate, affecting the property surrendered, so that said assignee may convey a clear and unincumbered title to any purchaser thereof, reserving to such creditors all their rights in law to the proceeds of the sale of the said property upon the final distribution thereof."

To this rule was appended the following, with other descriptions of property ordered to be sold. 1. "Property in the second municipality, bounded by New Levee, Commerce, St. Joseph, and Julia streets, with the improvements thereon, mortgaged to Nathan Hart. Terms, one third cash, the balance on a credit of twelve and eighteen months."

To the property above designated No. 1, the name of Joseph Fowler was appended, and the marshal returned "that he had received the same on the 12th May, 1845, and on the same day served a copy of the rule on the within named Joseph Fowler."

The principal objection to the validity of the sale of the property to Hart is founded on the procedure in the District Court, for the correction of the misdescription of the mortgage. As between the mortgagor and mortgagee, there can be no objection to this proceeding. The District Court had jurisdiction of the matter, and it is but the ordinary exercise of the powers of a court of chancery to reform a mortgage or other instrument so as to effectuate the intention of the parties. But it is alleged that Walden having become a bankrupt, his property was vested in his assignee for the benefit of his creditors, and that the judi-

cial mortgage of the petitioner could not be affected by a proce-
dure in which the petitioner was not a party, and of which he
had no notice.

The assignee generally represents the creditors, and being made
a party to the proceeding on the mortgage, he appeared and de-
nied the allegations of the petition of the mortgagee; but on the
hearing the District Court was satisfied of the truth of the alle-
gations in the bill, and reformed the mortgage so as to describe
truly the property intended to be mortgaged. It is true that
Fowler, the petitioner, was not a party to this proceeding, and
if the action of the District Judge had here terminated, it would
be difficult to maintain the decree.

By the 11th section of the bankrupt law the court had power
to order the assignee to redeem and discharge " any mortgage
or other pledge or deposit, or lien upon any property," &c. It
also necessarily had the power, on the sale of mortgaged pre-
mises, to distribute the proceeds as the law required. And in
regard to the property in question it appears that due notice
was given to Fowler of the application for the sale of it by
Hart, who claimed to have a special mortgage on it; and the
property was substantially described, and the day stated on
which the court would act on the application. And in addition,
a notice was published in two newspapers ten days before the
time set for hearing by the court. The object of this notice was
stated to be, to make an unembarrassed title to the purchaser,
and enable Fowler to make any objections he might have to the
sale, and the cancelment of his mortgage. That the rights of
creditors were reserved as to the proceeds of the mortgaged pre-
mises on a final distribution.

Whether the petitioner, Fowler, took any steps under this
notice does not appear; and in the absence of such evidence, it
may well be presumed that he acquiesced in the procedure.
The notice afforded him an opportunity to assert his rights,
and to object to the decree for the reform of Hart's mortgage, of
which he now complains, as fully as if he had been made a
party to that proceeding. This he could have stated as an ob-
jection to the sale of the premises, or in claiming the proceeds
of that sale. The reform of the mortgage by the court could
not have estopped him from the assertion of his rights, as he
was not a party to that proceeding of the court. But, hav-
ing neglected to assert his rights on the above occasion, it is
now too late to set them up against the purchaser of the pro-
perty at the sale.

Although there is some discrepancy in the description of the
property contained in the notice from that in the decree reform-
ing the mortgage, yet substantially it is believed to embrace the

same property; and as the notice was served upon the petition-
er, as having a mortgage on the property, we think it was suffi-
cient. The decree of the Circuit Court is affirmed, with costs.

### Order.

This cause came on to be heard on the transcript of the record
from the Circuit Court of the United States for the Eastern
District of Louisiana, and was argued by counsel. On consider-
ation whereof, it is now here ordered, adjudged, and decreed by
this court, that the decree of the said District Court in this
cause be, and the same is hereby, affirmed.