HUGH D. RHODES AND J. JACKSON RHODES, ADMINISTRATORS, CUM TESTAMENTO ANNEXO, DE BONIS NON OF THE ESTATE OF MAMIE D. RHODES, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91284.   Promulgated January 12, 1940.

*Thomas F. McDonald, Esq.,* and *Claude P. Berry, Esq.,* for the petitioners.

*Charles P. Reilly, Esq.,* and *Homer F. Benson, Esq.,* for the respondent.

OPINION.

BLACK: The estate tax and the additional estate tax imposed by sections 301 (a) of the Revenue Act of 1926 and 401 (a) of the Revenue Act of 1932, respectively, are "upon the transfer of the net estate of every decedent * * *." The term "net estate" means the "gross estate" as defined in section 302 of the Revenue Act of 1926 as amended, less the deductions specified in section 303 as amended. See also section 300 (b), Revenue Act of 1926. The respondent determined that, under subdivision (a) of section 302 of the Revenue Act of 1926, the value of decedent's gross estate was $289,175.79, $242,500 of which represented the value of 5,000 shares of common stock of the International Shoe Co. Subdivision (a) provides as follows:

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death;

What was the decedent's "interest" in the property the value of which the respondent has included in the decedent's gross estate? The respondent contends that the decedent was the sole owner of all the property which she attempted to dispose of in her will, including the shares of International Shoe Co. stock assigned to her by her children on or about July 30, 1925, and that the two decrees of the Circuit Court of St. Louis County, Missouri, referred to in our findings, are not binding upon the Board as requiring a holding contrary to the respondent's determination.

Petitioners contend that the determination of the decedent's "interest" in the property in question is purely one of the determination of property rights, and, as such, is controlled by the two decrees of the local circuit court.

We agree with the petitioners' contention. If the decedent owned only a life estate in the International Shoe Co. stock assigned to her in 1925 by her children, no part of the value of such property so assigned should be included in her gross estate, only her own share of the stock which she inherited from her husband's estate, which was one-fifth, should be included. Article 11 of Regulations 70, 1929 ed. and Regulations 80, 1934 ed., and article 13 of Regulations 80, 1937 ed., all provide: "Nor shall anything be included [in the decedent's gross estate] on account of an interest or an estate limited for the life of the decedent." The determination of whether the decedent owned only a life estate in the property assigned to her in 1925 by her children or whether she owned an absolute interest therein is clearly a determination of property rights, and, as such, is controlled by local law. *Poe* v. *Seaborn*, 282 U. S. 101; *Tyler* v. *United States*, 281 U. S. 497; *Freuler* v. *Helvering*, 291 U. S. 35; *Blair* v. *Commissioner*, 300 U. S. 5; *Sharp* v. *Commissioner*, 303 U. S. 624, reversing, per curiam, 91 Fed. (2d) 802; *Susan B. Armstrong*, 38 B. T. A. 658; *Estate of Frederick R. Shepherd*, 39 B. T. A. 38.

The Circuit Court for the County of St. Louis, State of Missouri, Division No. 2, after a full hearing in the matter, decreed on March 21, 1935, that the assignment executed by the children on July 30, 1925, "be and the same is hereby reformed as of the date of its execution to read" that the children "hereby jointly and severally grant, transfer and assign to our said mother, Mamie D. Rhodes, an estate, for her life only, in and to our joint and several interests in said estate of Taylor Rhodes, deceased * * *." The assignment as reformed also provided that upon the death of Mamie D. Rhodes "that certain life estate which we hereby assign to her shall terminate and our said joint and several interests shall thereafter be held and owned by us as if this instrument had not not been executed."

There is no evidence that this decree was obtained for the purpose of defeating any Federal estate tax; or that it was obtained by

collusion. Such evidence as we do have points to the fact that it was a decree rendered after there was a hearing on the merits and was not a mere consent decree. The respondent has placed in evidence before us the testimony of Leona Kemp, who testified at the hearing before the local circuit court held on March 15, 1935. The substance of her testimony was that she was the secretary to W. E. Baird, the attorney who prepared the original assignment; that Baird had since died; that prior to the preparation of the assignment she remembered seeing "Mr. and Mrs. Paul Rhodes and Mr. Hugh Rhodes" at Baird's desk, which was adjacent to her own; that she "heard Mr. Paul Rhodes tell Mr. Baird he wanted to have him draw up a document whereby they could give their share of the estate to their mother for the time of her life, and Mr. Baird made a notation on his calendar pad"; that about four or five days later, Baird placed a paper written in long hand on her desk and asked her to copy it; and that the paper thus handed to her was the original assignment. All of the evidence before us, including the recitals in the decree itself, indicates that the decree was rendered after a hearing on the merits and was in every respect regular. It was a decree adjudicating property rights. There is no evidence that it was ever modified or reversed, and, upon the authority of the above cited cases, it must be taken as establishing conclusively that the children assigned to their mother only a life estate in their interest in their father's estate.

Shortly after the reformation decree J. Jackson Rhodes and Hugh D. Rhodes, individually, and as executors and trustees under the will of Mamie D. Rhodes, deceased, filed a suit in the Circuit Court of the County of St. Louis, State of Missouri, May term, 1935, against Paul T. Rhodes, individually and as one of the trustees under the will of Mamie D. Rhodes, deceased, and Mary B. Rhodes, praying "for a decree of this court determining the ownership of all of the property held in the name of Mamie D. Rhodes at the time of her death on January 22, 1934, as between the estate of said Mamie D. Rhodes on the one hand and the plaintiffs and defendants herein on the other, and for such other and further orders and decrees as to the court may seem just and proper." The circumstances surrounding this suit are fully set out in our findings and need not be repeated here. Suffice it to say that on June 5, 1935, the court handed down its decree, in which it gave full faith and credit to the decree of the Circuit Court of the County of St. Louis, Division No. 2, heretofore mentioned and discussed.

It is our opinion that the two decrees in evidence before us establish conclusively that the decedent did not own outright any more

than one-fifth of the 5,000 shares of common stock of the International Shoe Co. which the respondent has included in her gross estate and we have so found in our findings of fact. Her "interest" in the remaining four-fifths of the 5,000 shares was a life interest, which ceased with her death, and under the above cited provisions of the respondent's regulations it was error for the respondent to include as a part of the decedent's gross estate the value of 4,000 shares, amounting to $194,000. Excluding $194,000 from the net estate as determined by the respondent leaves a net estate (exclusive of the exemptions) of $48,217.74, which is less than the exemption of $100,000 allowed by section 303 (a) (4) of the Revenue Act of 1926 and also less than the exemption of $50,000 allowed by section 401 (c) of the Revenue Act of 1932. It follows that there is no Federal estate tax due. Even if it should be held that the second court decree rendered by Division No. 3, June 5, 1935, was a consent decree because it followed substantially the lines of a written agreement which had been previously entered into by the parties, nevertheless, the first court decree of Circuit Court No. 2, reforming the original instrument of transfer, was not a consent decree and settled the question as to ownership of the International Shoe Co. common stock and we are bound by it.

The respondent stresses the importance of the fact that the decedent, after the original assignment from her children in 1925, thereafter treated the property as her own. It is true that she so testified in the affidavit referred to in our findings; that she actually sold 3,000 shares of the stock; that she pledged the remaining stock on loans; and that she attempted to dispose of all the stock in her will. As we look at this case, those were the facts for the local circuit court to consider in arriving at its decision in the matter. We may not assume that it did not do so. The decree having been rendered by a court of competent jurisdiction in a suit between adverse parties after a hearing upon the merits, we feel that we are bound by it. Whether the decree ever should have been rendered under the evidence is not a matter for us to decide. The question of property rights there decided is no longer an open question for the Board or the Federal Courts to consider. *Freuler* v. *Helvering; Blair* v. *Commissioner; Sharp* v. *Commissioner*, all *supra*.

The conclusion which we here reach is not contrary to our recent decision in *Estate of Arthur D. Forst*, 40 B. T. A. 876. In that case we held that a decree of the Orphans' Court of Mercer County, New Jersey, approving a certain claim against the estate was not binding upon the Board as to whether the claim was deductible under section 303 of the Revenue Act of 1926, in arriving at the net estate.

That question was altogether different from the one we have here to decide. Congress has established its own criterion as to what claims are deductible. Cf. *Lyeth* v. *Hoey*, 305 U. S. 188.

In view of our holding on the first issue, we need not decide the second issue.

Reviewed by the Board.

*Decision will be entered for the petitioners.*

---

STERNHAGEN, dissenting: I do not think that this Board is universally bound by a decree of a state court without regard for the circumstances in which it is rendered. The record in this proceeding does not prove that there was a substantial controversy in which the mother or her estate was unsuccessful in establishing that when she died she owned the International shares and in which the children established against opposition that she had but a life estate. On the contrary it proves that the state court decree was the sanction of a mutually satisfactory agreement in which no one—the administrator *ad litem*, the creditors, the heirs and legatees, or anyone else—was adversely interested. Whether that was an arrangement deliberately aimed at the Federal Government's tax interest in the decedent's estate, it is not possible to say; but that still leaves it less than an adversary proceeding resulting in a judicial decree immune to Federal question. Generally I think my brother Opper has correctly analyzed the state court proceedings and shown the fallacy of recognizing the decree as binding here.

---

OPPER, dissenting: The issue before us is one of fact,[1]—Did the decedent and others perform such acts that she acquired the property by gift or otherwise, and owned it when she died? Once the facts are ascertained, there will be no difficulty in applying appropriate principles of law. It is our function to ascertain the facts.

In this forum the burden of proof rests upon petitioners. Respondent determined by his notice of deficiency that this property belonged to decedent when she died. All facts necessary to reach the opposite conclusion must be proved here, and if there is a material failure of such proof the respondent must prevail. *Burnet* v. *Houston*, 283 U. S. 223; *Reinecke* v. *Spalding*, 280 U. S. 227; *United States* v. *Anderson*, 269 U. S. 422.

In 1934 these petitioners made their oath to the fact that the property which is the subject of this proceeding belonged to decedent when she died and was part of her estate.

---

[1] This is demonstrated by the last finding of fact herein.

Petitioners are here making a claim which is palpably inconsistent with that solemn statement. But the latter is not contradicted by anything that appears in this record. The majority may assume that it is explained away by the reformation decree. But that clearly is no more than an hypothesis. Petitioners did not take the stand. They did not testify that their statement was erroneous. They did not explain the error if there was one. They did not produce a single witness. There is accordingly not a scintilla of evidentiary justification for making that assumption.

But, even if that were the proffered explanation, it would not suffice without more. For all we know decedent's title may have rested on a transaction totally distinct from the assignment which was reformed in the state court. If that is not true petitioners could presumably have shown it. But merely producing the decree of reformation accomplishes nothing, since the result is purely a negative pregnant. It meets the respondent's presumptively correct determination, the petitioners' statement under oath, and the circumstantial proof,[2] to the effect that Mrs. Rhodes owned this property on January 22, 1934, by the claim that she did not get the property on July 30, 1925. The former present the issue here, whatever the state court may justifiably have felt its more limited function to be. Certainly we need not assume, although I recognize that the majority does, that those considerations would have been appropriate or relevant if presented to that court. Cf. *Pepper* v. *Litton*, 308 U. S. 295. It seems to me to follow that the reformation decree is of no benefit to petitioners in seeking to persuade us that their own verified admission and the facts appearing from the documents produced, to say nothing of respondent's determination, should be overthrown.

If the second judgment, the decree of distribution, is relied upon,[3] it affords petitioners no greater comfort. That decree was entered, as the proceeding which engendered it was commenced, by agreement

---

[2] The documents introduced show that in December 1925 decedent swore that her children had "assigned to me all their joint and several interests in said estate so that I am now the sole individual person interested * * *"; that in the same month decedent received the full consideration for the redemption of part of the stock; that in April and December, 1926, the remaining stock was transferred into her name; that in 1933 she sold a part of the stock and retained the proceeds and at various times all or parts of it were deposited as collateral to secure her loans; that some was so pledged when she died, and the remainder stood in her name; and that all is disposed of by her will. See *Turnbull* v. *Payson*, 95 U. S. 418, 421; *Albrecht & Weaver, Inc.*, 9 B. T. A. 560.

[3] Apparently that is petitioners' real reliance for they did not take the position even in the state court that the reformation decree settled the ownership of the property as of decedent's death. The petition in the distribution action, filed after the reformation decree concludes:

"WHEREFORE, plaintiffs pray for a decree of this court determining the ownership of *all* of the property held *in the name of Mamie D. Rhodes at the time of her death* on January 22, 1934, *as between the estate of said Mamie D. Rhodes* on the one hand and the plaintiffs and defendants herein on the other, * * *." [Emphasis added.]

of all the interested parties.[4] No issues were raised by the pleadings.[5] There was no real dispute among the "litigants",[6] no substantial difference in their property rights under either hypothesis.[7] This Board has consistently held that a state court decree entered under such circumstances is not conclusive, particularly as to a question of fact.[8] This principle was not thought to be impeached by *Freuler* v. *Helvering*, 291 U. S. 35.[9] Indeed, that decision makes it clear that it does not apply to a case where "the proceeding in the state court was a collusive one—collusive in the sense that all the parties joined in a submission of the issues and sought a decision which would adversely affect the Government's right to additional * * * tax", *supra*, at p. 45.

Issues of fact are tendered by the parties.[10] They can not be litigated unless they are, and they can not be decided unless they are litigated. It follows that an agreement of the parties to withhold factual issues, whether it be called collusive or not, must have the effect of precluding a decision. Under such circumstances there can be no adjudication which "settles the property rights", no "judgment which

---

[4] "WHEREAS, it is thought necessary that a suit be brought in the Circuit Court of the County of St. Louis, Missouri, for the purpose of determining the property owned by said Mamie D. Rhodes at the time of her death * * *.

"Now, THEREFORE, in consideration of the premises and for the purpose of finally determining and settling the rights of the parties hereto in and to the property mentioned in the last preceding paragraph hereof, * * * it is agreed as follows:

"2. The interest of said Mamie D. Rhodes and of the parties hereto in the real estate standing in the name of Mamie D. Rhodes at the time of her death shall belong to the parties hereto in equal shares.

"4. The remaining 5,000 shares of said common stock of the International Shoe Company shall be divided equally among the four parties hereto, subject to the payment by each of his part of the said debt of $86,745.00 * * *.

"6. The above mentioned suit shall be brought by Hugh D. Rhodes and J. Jackson Rhodes individually and as executors of the estate of Mamie D. Rhodes, deceased. * * *.

"7. No party hereto shall hereafter assert that he is entitled to any greater share of the property herein referred to * * *."

[5] The rights of lienors and vendees, who would otherwise have been necessary parties, *Fowler* v. *Hart*, 54 U. S. 373, 380, were not in issue. The children, by their agreement, had volunteered to observe interests in this respect which were actually inconsistent with their claims. The decree respected and enforced that protection.

[6] "Moreover, the claimant in the Probate Court and the executor who filed no objections to the claim were one and the same party, a party situation which should not be permitted." *United States* v. *Mitchell*, 74 Fed. (2d) 571, 574.

[7] This probably accounts for the elusive character of the decree which merely directs distribution in the manner prayed for and makes no finding of ownership.

[8] *Guaranty State Bank of Greenville, Texas*, 12 B. T. A. 543, 547; *Edgar M. Carnrick*, 21 B. T. A. 12, 23; *Allie E. Nicholson, Executrix*, 21 B. T. A. 795; *Theodore C. Jackson*, 32 B. T. A. 470, 481; *First-Mechanics National Bank of Trenton et al., Executors*, 40 B. T. A. 876; *Lewis Spencer Morris, Trustee*, 40 B. T. A. 988; cf. *Edward T. Blair*, 31 B. T. A. 1192.

[9] Both the *Jackson* and *Blair* cases were decided after the *Freuler* case, and purport to follow it. They were written by the same Board Member and both were reviewed by the full Board. They can be reconciled only on one hypothesis, with which the *Freuler* case, the *Blair* case in the Supreme Court, 300 U. S. 5, affirming the Board, and *Sharp* v. *Commissioner*, 303 U. S. 624, are in complete accord. That is, that a decree entered without contest can not take the place of factual proof.

[10] *Schumacher* v. *Mehlberg et al.*, 96 Mo. App. 598; 70 S. W. 910; R. S. Missouri, 1929, sec. 932.

fixed the rights." [11]   It is the agreement, not the decree, which has that effect, if anything has. *Northern Pacific Railway Co.* v. *Boyd*, 228 U. S. 482, 504. Since there was no decision of the factual issue in the state court proceeding because of the agreement, there is no excuse for abdicating our duty to determine the facts. The state court has not done it for us here, even if it could do so under other circumstances. Cf. *Lyeth* v. *Hoey*, 305 U. S. 188; *First National Bank in Dallas* v. *Commissioner*, 45 Fed. (2d) 509; certiorari denied, 283 U. S. 845.

The agreement was neither alleged in the pleadings nor mentioned in the decree. The effect upon the Government's tax claim—apparently the only possible practical result of the litigation—was presumably not disclosed. Collusion is a harsh word and we should not be required to apply it. But the proceeding was unquestionably nonadversary, the result obviously a consent decree. It need not be characterized as fraudulent to be considered ineffectual. *Northern Pacific Railway Co.* v. *Boyd, supra.* Even if not collusive in the stricter sense, *Lord* v. *Veazie*, 49 U. S. 250, it meets the test laid down in *Freuler* v. *Helvering, supra.* From either standpoint that decree, like the other, utterly failed to overcome the factual preponderance of the present record. *Fidelity & Columbia Trust Co.* v. *Lucas*, 52 Fed. (2d) 298, 301; reversed on other grounds, 66 Fed. (2d) 116; *Ford* v. *Commissioner*, 51 Fed. (2d) 206, 207.

Under the circumstances, the least that should be required of petitioners is that they produce evidence, if they can, that these decrees were not entered by consent, and that the estate tax result was not their only purpose; or, in the alternative, that they accept their responsibility as litigants before this Board and furnish it with the primary evidence. Absent such a record, I am of the opinion that petitioners should not prevail because there is nothing before us to warrant the requisite finding of ultimate fact. That is not a technical matter, nor one depending upon an inadvertent omission or careless oversight. Failure to produce these petitioners and their equally interested brothers and sisters as witnesses can not but suggest that their testimony would be less than favorable.[12]   It furnishes inadequate support for ignoring the rule which places upon taxpayers the burden of proving necessary facts. *Burnet* v. *Houston, supra.* To relax that rule in such a case as this, without an unmistakable mandate in appellate court decisions, can not but result in depriving the tribunals established for that purpose, including this Board, of essential jurisdiction; and, what

---

[11] *Freuler* v. *Helvering, supra*, pp. 43, 46.

[12] "The non-production of witnesses when procurable creates a presumption that their testimony, if procured, would be unfavorable." Hamel, Practice and Evidence before the U. S. Board of Tax Appeals, sec. 252, citing *Alexander* v. *Blackman*, 26 App. D. C. 541; *Evans* v. *Bell*, 49 App. D. C. 238.

is of infinitely greater moment, in withdrawing from the administrative arm of the Federal Government the indispensable prerogative of maintaining its position in some judicial forum.

HILL and DISNEY agree with this dissent.