Mary Kent Miller v. Commissioner.
Miller v. Commissioner
Docket No. 2187-62.
United States Tax Court
T.C. Memo 1963-215; 1963 Tax Ct. Memo LEXIS 132; 22 T.C.M. (CCH) 1078; T.C.M. (RIA) 63215; August 14, 1963
*132 On August 7, 1959, petitioner created a trust for the benefit of her children, naming a bank as trustee. By the terms of the trust its validity, construction, and administration were to be determined in accordance with the laws of Texas. The trust was established for a period of 121 months and provided that, at any time after the expiration of 10 years from the date of its establishment, it could be revoked upon written direction of the grantor. On February 26, 1962, after the income tax returns of petitioner for the years 1959 and 1960 were examined by respondent, a written direction was served on the trustee revoking the trust and demanding a return of the corpus. On March 14, 1962, the trustee brought an action in a Texas State Court to determine whether the trust was irrevocable. A notice of deficiency was issued to petitioner on March 20, 1962. With all parties before the court and represented by counsel in an adversary proceeding, the State court entered a judgment holding the trust to be irrevocable for 10 years. Held: 1. A State court judgment, rendered in an adversary proceeding, which construes the terms of a trust and determines the legal rights of the parties, is binding *133 on the Tax Court. 2. The trust was irrevocable for a period of 10 years and, therefore, the income therefrom was not taxable to petitioner. William Monroe Kerr, P.O. Box 913, Midland, Tex., for the petitioner. Williard A. Herbert for the respondent. DAWSON
Memorandum Opinion DAWSON, Judge: Respondent *134 determined deficiencies in the income tax of petitioner for the years 1959 and 1960 in the respective amounts of $868.03 and $2,440.47. The only issue for decision is whether under Texas law a trust created for the benefit of petitioner's children could be revoked by her before the expiration of 10 years from the date of its creation, thus resulting in the trust income being taxable to her during the years in controversy. [1]
Practically all of the facts were stipulated and are so found. Mary Kent Miller (hereinafter referred to as petitioner) is a widow who resides at 4508-A Abbott, Dallas, Texas. She filed her Federal income tax returns for the years 1959 and 1960 with the district director of internal revenue at Dallas. On August 7, 1959, petitioner executed as Grantor a Declaration of Trust naming the First National Bank of Midland, Texas, as Trustee, for the use and benefit of her four adult children, Mrs. Bernold Hanson, Milward Kent Miller, Mrs. Arthur Leo Chase, and Mrs. Frank Nagle. Certain securities were assigned and transferred to the Trustee. The trust instrument provides, in pertinent *135 part, as follows: The Trustee shall have and hold the Trust Fund in trust for and during a term of one hundred twenty-one (121) months from and after the date hereof for the use and benefit of the persons hereinafter specified. During the life of the Grantor hereunder, the Trustee shall collect the income from the Trust Fund and any reinvestments thereof, as well as any cash or other property acceptable to Trustee which may be added to the Trust Fund by Grantor or any other person during the continuance of the Trust, and, after paying and discharging all taxes, charges and expenses in connection with the care and management of said Trust Fund, the Trustee shall pay or apply the net income therefrom in annual or more frequent installments to and for the use of Grantor's children, Mrs. Bernold Hanson, Milward Kent Miller, Mrs. Arthur Leo Chase and Mrs. Frank Nagle in equal parts, share and share alike, as their separate property. In the event of the death of all Grantor's children prior to the termination of this Trust, or upon the Grantor's prior death, the Trustee shall apply, transfer and set over the principal of said Trust Fund as the Grantor may appoint by Will, and in default *136 of such appointment then said Trustee shall pay, transfer and set over the principal of said Trust Fund to the Executors of the Will or the Administrators of the Estate of the Grantor. If any of Grantor's children should die during the continuance of this Trust, the Trustee shall pay over the deceased beneficiary's share of any unexpended or accumulated income to the appointees designated in said beneficiary's Will. In default of such appointment, or to the extent that the same shall be ineffectual, the Trustee shall pay over the unexpended or accumulated income to the Executors of the Will or the Administrators of the Estate of said beneficiary. At any time after the expiration of ten (10) years from the date of the establishment of this Trust, the same may be revoked or canceled in whole or in part upon the written direction of Grantor to the Trustee, and upon such revocation or cancellation the Trustee shall forthwith transfer and deliver over to Grantor all of the securities and other property then constituting the principal of the Trust Fund, or such part thereof in respect of which the Trust has been revoked and canceled, as the case may be, after first deducting the expenses *137 of the Trustee; provided, however, that any and all income accrued in the hands of the Trustee, including income accrued to the date of such revocation and cancellation, shall be retained by the Trustee and paid in equal shares to the beneficiaries as hereinabove provided. * * *
This Trust has been accepted by the Trustee in the State of Texas, and all questions pertaining to its validity, construction and administration shall be determined in accordance with the laws of that state. The First National Bank of Midland (hereinafter called the Trustee) received under the terms of the trust dividends in the amount of $2,001.94 in 1959 and in the amount of $6,750.42 in 1960. A Form 709, Gift Tax Return, with an enclosed check for $1,144.62 was deposited by petitioner with the district director of internal revenue at Dallas on April 25, 1960. This return has not been accepted by respondent as a gift tax return. On Febrary 26, 1962, about two months after respondent examined petitioner's income tax returns for the years 1959 and 1960, the petitioner, in writing, purported to revoke the trust and demanded that the Trustee distribute to her the entire principal thereof, together *138 with any undistributed or accrued net income therefrom. On March 14, 1962, the Trustee and the beneficiaries of the trust filed a petition against the Grantor (petitioner herein) in the District Court of Midland County, Texas, alleging that the trust was irrevocable and that the trust property need not be returned to her. William Monroe Kerr represented the plaintiffs in this action and the defendant, Mary Kent Miller, was represented by Emil C. Rassman and Larry J. Lynn. Also on March 14, 1962, William Monroe Kerr wrote the following letter to William E. Berry, Technical Advisor, Appellate Division, Internal Revenue Service, Dallas, Texas: Mary Kent Miller has attempted to revoke the trusts created by the trust instrument in question, and has demanded the delivery of all trust assets to herself. The First National Bank of Midland, Texas, Trustee of the trusts, has refused to acknowledge the effectiveness of the purported revocation in the belief that the instrument is not revocable under the laws of the State of Texas at any time prior to the expiration of ten years from the date of the creation of the trusts in 1959, and is, over the protests of Mrs. Miller, continuing to administer *139 the trusts for the use and benefit of the beneficiaries designated in the Declaration of Trust, pursuant to its terms and provisions. To resolve the issue of revocability or irrevocability within the ten year period, The First National Bank of Midland, Texas, Trustee, joined by the beneficiaries designated in the Declaration of Trust, is suing in the District Court of Midland County, Texas for a declaration of the legal effect of the instrument under the laws of the State of Texas insofar as revocability is concerned. Inasmuch as the Internal Revenue Service is contending that under the laws of the State of Texas the trusts are revocable at this time, I thought you would be interested in this litigation, and for this reason and for the Internal Revenue Service I am herewith furnishing to you a copy of the Plaintiffs' Petition. I am certain that Mrs. Miller, the Defendant in the suit, would be most pleased for the Treasury Department to join in the suit to assist her in establishing the contention that you are urging in the captioned tax proceedings, namely that the trusts are at all times revocable by Mrs. Miller. The Plaintiffs would also invite the Government to intervene in *140 the case if it sees fit to do so. Mr. Emil C. Rassman, Midland Tower Building, Midland, Texas, has been representing Mrs. Miller in this matter, and presumable [presumably] will represent her in the Declaratory Judgment action now pending. Should the Service be interested in the litigation short of making the Government a party thereto, I am certain that Mr. Rassman would be most pleased to consider and to put forward to the Court such suggested contentions concerning revocability as Government counsel might suggest to him. Because of the risk to which The First National Bank of Midland, Texas, Trustee is exposing itself in declining to agree with the legal effect of a purported revocation of the trusts at this time, it will attempt to have this matter brought on for a full and complete hearing before the Court within a month so that this matter, insofar as these trusts are concerned and the effect of State law upon them, may be forever resolved by the Courts of the State. On March 20, 1962, the notice of deficiency involved herein was sent to the petitioner. On April 12, 1962, a letter was sent on behalf of J. Marvin Kelley, Regional Counsel, Internal Revenue Service, to William *141 Monroe Kerr, which reads as follows: Your letter of March 14, 1962, together with a petition purportedly filed in the District Court of Midland County, Texas, has been forwarded to this office. You state that Mrs. Miller would be pleased for the Treasury Department to join in the suit. While we understand that an examination is presently being made regarding the Federal tax liabilities of Mary Kent Miller, we have nothing before us at this time regarding such liabilities. Accordingly, without discussion of other reasons for our not joining such proceeding, any action at this time by the Government would obviously be premature. An answer was filed on March 30, 1962, to the petition in the District Court of Midland County. Thereafter, the plaintiffs' brief, the defendant's brief, and the plaintiffs' reply brief were filed with the District Court. These briefs present detailed arguments advanced by the parties to that action as to whether the trust by its terms is revocable or irrevocable. Finally, on June 9, 1962, Perry D. Pickett, the Judge of the District Court of Midland County, Texas, entered a judgment which reads, in pertinent part, as follows: On this the 9th day of June, *142 1962, the Court in due and proper order brought on to be heard the captioned cause. The Plaintiffs appeared by counsel and announced ready, and the Defendant appeared by counsel and announced ready, whereupon the Court proceeded to review the pleadings of the parties, including the Declaration of Trust attached to Plaintiffs' Original Petition and marked Exhibit "1", and the instrument entitled "Revocation of Trust" which is attached as Exhibit "2" to Plaintiffs' Original Petition, heard the admission of counsel for Defendant that said Exhibit "1" and Exhibit "2" to Plaintiffs' Original Petition are true and correct copies of the Declaration of Trust and Revocation of Trust, respectively, involved in this case, heard the arguments of counsel, and, after hearing, considering and fully understanding the same, the Court finds and concludes that it has jurisdiction of the subject matter of this suit, that it has jurisdiction of all parties to the suit, that the controversy between the parties as framed by their pleadings on file in this case as a real, genuine and justiciable one, that the Declaration of Trust, copy of which is attached to Plaintiffs' Original Petition marked Exhibit "1", *143 is not the subject of revocation until after the expiration of ten years from August 7, 1959, the date of the establishment of said trust, the the purported act of revocation of Defendant Mary Kent Miller, on February 26, 1962, a copy of which is attached as Exhibit "2" to Plaintiffs' Original Petition, is not effective, and cannot be given effect until after the expiration of ten years from August 7, 1959, that in said Declaration of Trust, Defendant Mary Kent Miller by providing therein that "at any time after the expiration of ten (10) years from the date of the establishment of this trust, the same may be revoked or canceled in whole or in part upon the written direction of Grantor to the Trustee" has the legal effect under the laws of the State of Texas to expressly make the trusts created by said instrument irrevocable during the period commencing with the creation of the trust by said Declaration of Trust on August 7, 1959 prior to the expiration of ten years from said date, in compliance with the provisions of law contained in Section 41 of the Texas Trust Act, Section 7425(b), Revised Civil Statutes of Texas, 1925, as amended, that Plaintiffs' prayer should in all things be *144 granted, and that the prayer of the Defendant should in all things, be denied. The taxability to petitioner of the income received by the Trustee in 1959 and 1960 depends upon whether she, as Grantor, had the power to revoke the trust within 10 years from the date it was created. [2] The possibility of the trust property revesting in petitioner is a matter of State, not Federal, law. Blair v. Commissioner, 300 U.S. 5 (1936); Helvering v. Stuart, 317 U.S. 154 (1942). In this proceeding it must be determined by the laws of the State of Texas. *145 Petitioner contends that the trust is irrevocable for a period of 10 years from the date of the transfer to the trust of its corpus and she relies primarily upon the judgment of the State court as being determinative of the very issue before us. It is true that a matter of State law decided by a court of competent jurisdiction in an adversary proceeding determines the rights of the parties and is, to that extent, binding and conclusive with respect to tax liability. Freuler v. Helvering, 291 U.S. 35 (1934); Helvering v. Rhodes' Estate, 117 F. 2d 509 (C.A. 8, 1941), affirming 41 B.T.A. 62 (1940). However, where the State court judgment is obtained through "collusion" for the purpose of avoiding tax liability, it has no binding effect on the Commissioner. Blair v. Commissioner, supra, Saulsbury v. United States, 199 F. 2d 578 (C.A. 5, 1952), certiorari denied 345 U.S. 906 (1953). Since the law presumes that court proceedings are regular and valid, we think in a situation like this, where "collusion" is asserted by respondent, it is incumbent upon him to produce at least some evidence to that effect. But here he has *146 not done so. He merely urges us to find that there was "no necessity or reason for the state court judgment except for its effect on the Federal tax question, and all of the parties to the state court action were undoubtedly aware of the position that respondent was going to take." This alone, in our opinion, is insufficient to give the State court proceeding a collusive, non-adversary character. Nor was it any less adversary because the statutory notice of deficiency was issued prior to the State court judgment. Obviously, it was to avoid the possibility of respondent charging that silence is evidence of clandestine collusion that the Government was invited on March 14, 1962, to either intervene or otherwise assist in the State court action. It requires no wandering imagination for us to see the need and purpose of the State court proceeding. Petitioner attempted to revoke the trust because, if revocable before the expiration of 10 years, it would not have accomplished what she originally set out to do. If revocable, the consequences, tax and otherwise, for periods prior to the early part of 1962 were fixed and she could do nothing about them. However, by revoking the trust, she *147 could control all the consequences after February 1962, and she chose to do so by trying to exercise the very right the respondent contends she possessed. Hence the issues were raised as to who was entitled to hold the trust corpus, who was entitled to the income therefrom, and who had the power to manage the property and under what rules and laws. The First National Bank of Midland, the Trustee, was faced with the consequent measurement of its liability to the petitioner or to the beneficiaries depending upon which way it treated the attempted revocation. Being unable to find the solution to its dilemma in the conflicting opinions of its counsel and the Internal Revenue Service, and needing the correct answers, the Trustee obtained them from the only source available to it, the District Court of Midland County, Texas. The Trustee was not concerned with income tax liability. It had none whichever way the revocability issue went. It was concerned with real and tangible liability on its part. This is not the situation we had before us in Will Flitcroft, 39 T.C. 52 (1962), on appeal (C.A. 9, March 11, 1963), which is relied on by the respondent. In that case the creator *148 was held taxable on the income of trusts created in 1953 for a term of 10 years and 5 days, where under California law the trusts were revocable until amendments in July 1954 expressly made them irrevocable. A 1961 California court judgment reforming the trust instruments and ordering that the trusts were irrevocable from their inception was held to be not binding because it was obtained at the creator's request and was in a limited sense collusive. The judgment entered by the District Court of Midland County recites that all parties were before the court, represented by independent counsel, the court had jurisdiction, a genuine and justicable controversy existed and, after hearing arguments of counsel, it concluded that the trust is not "subject to revocation until after the expiration of 10 years from August 7, 1959." This judgment decided an issue regularly submitted and is not in any sense a consent decree pro forma. Following the mandate of the United States Supreme Court in Freuler v. Helvering, supra, we are unwilling under these circumstances to "impugn the good faith and judicial character of the state court's decree." Our decision in George N. Spiva, 43 B.T.A. 1174 (1941), *149 controls this case. See also Louise Savage Knapp Trust A, 46 B.T.A. 846 (1942); Estate of Cyrus M. Beachy, 15 T.C. 136 (1950); Estate of Louis J. Dorson, 4 T.C. 463, 469 (1944); Estate of William A. Landers, 38 T.C. 828, 832 (1962); and Gallagher v. Smith, 223 F. 2d 218 (C.A. 3, 1955). We conclude that the State court judgment was rendered in an adversary proceeding and cannot be ignored. While the conclusion thus reached actually makes it unnecessary for us to express our own opinion on the revocability question, we consider it important enough to add that we agree with the decision of the District Court of Midland County and construe the terms of the trust instrument as creating an irrevocable trust under Texas law. Accordingly, we hold that the trust is irrevocable until August 7, 1969, and the income therefrom is not taxable to the petitioner. Decision will be entered for the petitioner. Footnotes
1. All Code references in this opinion are to the Internal Revenue Code of 1954.↩
2. SEC. 671. TRUST INCOME, DEDUCTIONS, AND CREDITS ATTRIBUTABLE TO GRANTORS AND OTHERS AS SUBSTANTIAL OWNERS. Where it is specified in this subpart that the grantor or another person shall be treated as the owner of any portion of a trust, there shall then be included in computing the taxable income and credits of the grantor or the other person those items of income, deductions, and credits against tax of the trust which are attributable to that portion of the trust to the extent that such items would be taken into account under this chapter in computing taxable income or credits against the tax of an individual. Any remaining portion of the trust shall be subject to subparts A through D. No items of a trust shall be included in computing the taxable income and credits of the grantor or of any other person solely on the grounds of his dominion and control over the trust under section 61 (relating to definition of gross income) or any other provision of this title, except as specified in this subpart. SEC. 676. POWER TO REVOKE. (a) General Rule. - The grantor shall be treated as the owner of any portion of a trust, whether or not he is treated as such owner under any other provision of this part, where at any time the power to revest in the grantor title to such portion is exercisable by the grantor or a nonadverse party, or both. (b) Power Affecting Beneficial Enjoyment Only After Expiration of 10-Year Period. - Subsection (a) shall not apply to a power the exercise of which can only affect the beneficial enjoyment of the income for a period commencing after the expiration of a period such that a grantor would not be treated as the owner under section 673 if the power were a reversionary interest. But the grantor may be treated as the owner after the expiration of such period unless the power is relinquished.↩